UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

ROCKY BAY, LLC,

            Debtor.

Case No. K09-00735-DMD
Chapter 11

**Filed On 3/2/10**

## MEMORANDUM ON CONVERSION, DISMISSAL, AND RELIEF FROM STAY

      Debtor Rocky Bay, LLC, filed for chapter 11 relief on October 8, 2009.[1] BLX Commercial filed a motion for dismissal or conversion on November 5, 2009.[2] It also filed a motion for relief from stay on November 13, 2009.[3] A hearing on the motion to dismiss or convert and a final hearing on the motion for relief from stay was held in Ketchikan on February 11, 2010. For the reasons set forth herein, I will deny the motion to dismiss or convert and grant the motion for relief from stay.

      The Rocky Bay is a custom fishing camp barge. It was conceived by Donald and Suann Mulhoven in 1999. They decided to develop the floating lodge to allow sport fishermen to "follow the fish and weather" and have a "superior fishing opportunity."[4] The Mulhovens are hardworking commercial fishermen. They sought to diversify their income

---

[1] Petition, filed Oct. 8, 2009 (Docket No. 1).

[2] BLX's Mot. for Conversion or Dismissal, filed Nov. 5, 2009 (Docket No. 13).

[3] BLX's Mot. for Relief From Stay, filed Nov. 13, 2009 (Docket No. 15).

[4] Mulhoven Decl., filed Dec. 7, 2009 (Docket No. 22), at 2.

through construction of the fishing camp barge. They purchased a surplus Navy housing barge in 1999. They had the barge towed to Whidbey Island, Washington, for overhaul of the mechanical and electrical systems. The barge was towed to Ketchikan in 2001 and further work was completed. The Mulhovens got loans from BLX totaling $1.3 million for completion of the improvements to the barge in 2002.[5] They also contributed their own time, money and effort to see the barge completed and outfitted.

As completed, the barge is a unique vessel. It has an overall length of 112 feet and a width of 42 feet. It is topped with a two-story wooden structure with gray stained cedar siding and a green steel roof. There is a wooden exterior deck on portions of the main deck. The first floor has a lounge, a bar, a kitchen, a scullery area and a dining area. There are four crew staterooms on the first floor, and the second floor has a series of nine staterooms for guests. Each of the staterooms has its own sink, shower stall and toilet. The second floor also has a TV/recreation room. The barge has its own self-contained electrical, water and sewage systems. The living areas are heated by a hot water heating system. There are three washers and dryers aboard. There's a shop and a room for processing seafood below the main decks, as well as a walk-in freezer. Other than some damage which occurred following the arrest of the vessel, it is in good condition.

In spite of the improvements the Mulhovens made to the barge, it has had an unprofitable operating history. Utilizing Diane Palmer's Revised Cash Basis income

---

[5] BLX Exs. 2 and 3.

statements, losses have ranged from a low of $48,967.00 for 2008, to a high of $302,135.00 for 2006.[6] Average losses from the operations of the debtor for the six year period from 2003 through 2008 are $182,497.00 per year. There were no operations in 2009 as the vessel was arrested.

Dismissal or Conversion

BLX argues for dismissal based on its view that this case was filed in bad faith. "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal."[7] Several recurring conditions usually accompany a bad faith filing, including: (1) the debtor has but one asset, such as a tract of undeveloped or developed real property; (2) there are generally no employees or no cash flow; (3) there are only a few, if any, unsecured creditors; (4) the property has been posted for foreclosure and bankruptcy offers the only possibility of forestalling loss of the property; and (5) the 'new debtor syndrome' occurs, in which a one-asset entity is created to isolate a property from its creditors.[8]

---

[6] BLX Ex. 40, at 13.

[7] *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir. 1994) (citations omitted).

[8] *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Dev. Co.),* 779 F.2d 1068, 1073 (5th Cir. 1986).

Applying these factors here leads to mixed results. The debtor does have but one substantial asset: the Rocky Bay barge. There are no employees or no cash flow now. The Rocky Bay has operated seasonally and has been a family enterprise without employees. Don and Suann Mulhoven, the owners of the Rocky Bay, provide most of the labor for the business, along with help from family members. Rocky Bay does have few unsecured creditors. Nine unsecured creditors, with claims totaling $66,038.20, have been scheduled.[9] The barge has been arrested and posted for foreclosure. Bankruptcy does offer the only possibility of forestalling the loss of the property. The entity Rocky Bay LLC was formed in 1999. There is no "new debtor syndrome" in this case.

While some of the factors weigh in favor of a finding of bad faith, there is one additional, significant factor to be considered in deciding the issue here. The debtor is in possession of a survey from Naval Architect Paul Zankich which valued the vessel at $3.4 million as of March 23, 2009.[10] Under these circumstances, I cannot conclude that the debtor's chapter 11 filing was made in bad faith. This case should not be dismissed on bad faith grounds and that aspect of BLX's motion is not well taken.

BLX has also moved to dismiss this case for cause under several of the factors listed in 11 U.S.C. § 1112(b)(4). BLX, as the moving party, bears the burden of proving by

---

[9] Sched. F, filed Oct. 30. 2009 (Docket No. 11).

[10] Debtor's Ex. L.

4

a preponderance of the evidence that cause for dismissal exists.[11] The first ground for dismissal under § 1112(b)(4) is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[12] BLX alleges that there is no present business for the Rocky Bay and the only costs of the estate are being born by BLX. However, the business of the Rocky Bay is seasonal and BLX is not presently bearing the ongoing costs of the estate. The debtor has procured moorage and insurance for the vessel at its own expense. The debtor has possession of the vessel and serves as its custodian. BLX has failed to establish that a continuing loss to or diminution of the estate exists.

BLX also seeks dismissal for gross mismanagement of the estate, failure to maintain appropriate insurance, failure to comply with a court order, an unexcused failure to meet filing or reporting requirements and failure to provide information to the United States Trustee.[13] None of these allegations have merit. The gross mismanagement BLX complains of is the debtor's failure to make payments to it in 2008. That year, the debtor was to pay BLX a total of $214,572.00, but was able to pay only $106,765.00. I conclude that the debtor's failure to make full payment to BLX in 2008 was not, in and of itself, gross mismanagement of the debtor. BLX hasn't produced any evidence to show that the debtor has failed to comply with a court order. Nor, for that matter, has BLX submitted evidence

---

[11] *Matter of Woodbrook Assoc.,* 19 F.3d 312, 317 (7th Cir. 1994), *citing* 5 COLLIER ON BANKRUPTCY ¶ 1112.03[2][a], at 1112-16; *Colonial Daytona Ltd. P'ship v. American Sav. of Fla., F.S.B.*, 152 B.R. 996, 1002 (M.D. Fla. 1993).

[12] 11 U.S.C. § 1112(b)(4)(A).

[13] 11 U.S.C. §§ 1112(b)(4)(B), (C), (E), (F) and (H).

5

showing that the debtor has failed to provide insurance information on the vessel to the United States Trustee or otherwise failed to produce reports or tax returns to the United States Trustee. BLX's motion to dismiss or convert will be denied.

Relief from Stay

BLX has also moved for relief from stay.[14] 11 U.S.C. § 362(d)(1) provides that a court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."[15] Subsection 362(d)(2) provides for stay relief if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization."[16] The provisions of subsections (d)(1) and (d)(2) are disjunctive; a creditor only needs to prove entitlement to relief under one section or the other, but not both.[17]

To determine whether the interest of BLX is adequately protected, I must determine the current value of the Rocky Bay. Paul Zankich, a professional engineer and naval architect for the debtor, valued the Rocky Bay at $3.437 million as of March 23,

---

[14] The debtor may have a claim against BLX for damages incurred while the vessel was in its custody. Such an action must be brought separately from relief from stay proceedings, however. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985).

[15] 11 U.S.C. § 362(d)(1).

[16] 11 U.S.C. § 362(d)(2).

[17] *Sun Valley Ranches Inc., v. Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.),* 823 F.2d 1373, 1376 (9th Cir. 1987).

6

2009.[18] He revised that figure downward to $2.902 million as of February 5, 2010.[19] Paul Reisner, a marine surveyor employed by BLX, valued the barge at $2.1 million as of May 11, 2009 and $1.6 million as of January 22, 2010.[20] I found the testimony of Reisner to be the most persuasive and adopt his value of $1.6 million for several reasons. First, Reisner is a fully accredited marine surveyor. He is a member of the National Association of Marine Surveyors. He has been surveying vessels for many years; it's his only occupation. Zankich is a professional engineer. While he understands the design and costs of marine construction, he does not have an in depth knowledge of the current market for unique vessels like the Rocky Bay.

Reisner's value is also more in line with the historic financial performance of the debtor. The debtor only operates for a short period of time each year. It has never turned a profit and has required constant loans and capital injections to stay financially afloat. As CPA Diane Palmer has indicated, the debtor took a loan of $508,493.00 in 2003, received contributed capital of $211,510.00 in 2004 and of $385,162.00 in 2006, and took a loan of $97,000.00 in 2007.[21] The Mulhovens took out $58,302.00 from the LLC in 2008, a year in which the debtor substantially defaulted on its obligations to BLX.[22] Given the poor financial

---

[18] Debtor's Ex. L.

[19] Debtor's Ex. BB.

[20] BLX Exs. 19 and 21.

[21] BLX Ex. 40 at 14.

[22] BLX Ex. 40 at 16. BLX claims that payments of $107,807.00 were not made in 2008.

7

performance of the debtor, I feel the Zankich appraisal is unrealistic and out of touch with current market conditions.

Having determined the value of the barge to be $1.6 million, the issue becomes whether BLX is adequately protected. BLX is owed approximately $1,598,496.11 as of March 1, 2010.[23] While the debtor disputes some of the charges encompassed in the claim, I find that BLX's claim is so substantial that it is not protected by an equity cushion in the barge. Absent adequate protection, BLX is entitled to relief from stay. A discussion of adequate protection is moot, however, if BLX is entitled to relief from stay under 11 U.S.C. § 362(d)(2).

11 U.S.C. § 362(d)(2) provides for relief from stay when the debtor does not have an equity in the property and such property is not necessary to an effective reorganization. BLX has established that there is no equity in the barge. As noted by the Supreme Court:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that

---

[23] *See* BLX's Mot. for Relief From Stay, filed Nov. 13, 2009 (Docket No. 15), at 2, for a breakdown of its claim.

8

> there must be "a reasonable possibility of a successful reorganization within a reasonable time."[24]

The debtor has failed to meet this standard.

The debtor has previously entered into two workout agreements with BLX. The first agreement was dated April 1, 2004.[25] It provided for interest-only payments for a period of 24 months with a reamortization of the secured debt over a ten year period following the interest-only payments. The debtor defaulted on this agreement and a second workout agreement was entered on May 30, 2007.[26] Under the second agreement, the debtor was required to make a payment of $24,106.87 to bring interest current. The debtor was to make three interest-only payments from June 1, 2007, to August 1, 2007, and then amortize the balance of the loan over 103 payments, such that the whole balance would be paid in full by March 1, 2016. The debtor defaulted on the second agreement and the arrest of the vessel and this chapter 11 ensued.

The debtor has submitted projections for operations in the years 2010, 2011 and 2012.[27] The projections are internally inconsistent and wildly inaccurate. For example, the projections forecast lodge and guided fishing income of $632,000.00 in 2010. The lodge has

---

[24] *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 375-376 (1988)(emphasis in original).

[25] BLX Ex. 8.

[26] BLX Ex. 10.

[27] Debtor's Ex. K.

9

never generated revenues in excess of $216,575.00 in its history. There is no basis for such an assumption. The projection goes on to predict 2010 net income from all lodge activities of $1,475,55.00. Assuming this means $1,475,550.00 dollars, it makes no sense. Adding the projected net profits from all debtor activities in 2010 yields a total of $842,950.00. The debtor has made a series of math errors in the projections. I concur in CPA Diane Palmer's understated conclusion:

> In my opinion the RBL's forecast for 2010 through 2012 is not realistic or attainable. RBL increased their revenue by approximately 8% in 2008 over 2007 revenue. The ability to achieve the level of increased gross revenue that is projected is not possible given RBL's historical performance.[28]

Palmer goes on to point out that the expenses in the forecast were understated in twelve separate categories. The debtor's projections do not establish any reasonable basis for a plan of reorganization.

I don't think Don Mulhoven believes in these projections, either. He seemed to distance himself from them in his testimony. He thought long-term leasing of the barge to mining or logging companies could generate the income necessary to amortize the debt to BLX. He has no such leases in hand at this time but he remains optimistic as to his chances.

Given the history of the debtor, there is no reason for Mr. Mulhoven's optimism. I conclude that there is no effective reorganization that is in prospect. BLX has met the requirements for relief from stay under 11 U.S.C. § 362(d)(2). An order and

---

[28] BLX Ex. 40, at 9.

10

judgment will be entered denying BLX's motion to dismiss or convert and granting BLX's motion for relief from stay.

DATED: March 2, 2010.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: D. Bundy, Esq.
P. Hoffman, Esq.
K. Hill, Esq.
U. S. Trustee

03/02/10

11